**COMISKEY ENGINEERING CO., Inc., Plaintiff,**

v.

**JOSEPH BUEGELEISEN CO., Inc. and Sears, Roebuck & Co., Defendants.**

**Civ. A. No. 20201.**

United States District Court
E. D. Michigan, S. D.

Oct. 11, 1962.

Soans, Anderson, Luedeka & Fitch, Chicago, Ill., for plaintiff.

Cullen, Sloman & Cantor, Detroit, Mich., for defendant.

TALBOT SMITH, District Judge.

This is an action for patent infringement, arising under the patent laws of the United States. This Court has original jurisdiction under the provisions of 28 U.S.C. § 1338(a). The plaintiff is the Comiskey Engineering Co., Inc., an Illinois corporation, with its principal place of business at Mena, Arkansas. It is engaged in manufacturing and selling motorcycle accessories, including motorcycle windshields, the subject-matter of this controversy.

Defendant Joseph Buegeleisen Co., Inc., is a Michigan corporation, engaged in manufacturing and selling motorcycle accessories, including the motorcycle windshields accused of infringement of the patent-in-suit. Defendant Sears, Roebuck and Co., a New York corporation, has a place of business in Detroit, Michigan, and is a retailer of the motorcycle windshields manufactured by defendant Buegeleisen. There is no issue as to jurisdiction or venue. Complaint of infringement was made in the usual form, the answer to which amounted to a general denial. In addition the pleadings embodied a declaratory judgment counter claim, with reply thereto. There is no need to set the pleadings out in detail.

The suit is based upon United States Reissue Letters Patent No. 23,039, issued to Anthony T. Comiskey, Sr., on September 21, 1948. The original patent No. 2,396,493 was issued on March 12, 1946, on an application filed May 23, 1945, application for reissue having been filed on February 15, 1957.

Claim 1 of the Comiskey patent, the only claim in issue, is as follows:

" * * * 1. In a motorcycle windshield, a transparent, curved screen, a brace extending across and secured to the back of said screen adjacent the middle portion thereof immediate its top and bottom edges, a pair of supporting rods having relatively offset upper and lower end portions, and a pair of clamps mountable on opposite side portions of a motorcycle handle bar structure, said brace being provided with a pair of bosses extending rearwardly therefrom respectively adjacent the opposite sides of said screen and each of said bosses being provided with an opening having its axis extending up and down approximately in parallel relation to the plane of said screen, each opening being adapted to rotatably adjustably receive a short upper end portion of one of said supporting rods, and said clamps each being provided with means for vertically and rotatably adjustably receiving a short lower end portion of one of said rods, major portions of the length of said supporting rods being exposed intermediate said bosses and said clamps in proximity to the back of said screen so as to be thereby protected. * * * "

In short, plaintiff asserts that the substance of the Comiskey invention is, in plaintiff's words:

" * * * (a) A transparent windshield with a horizontal brace across the back thereof about midway between the top and bottom of the transparent windshield;

"(b) Bosses on the back of the brace adjacent its ends and rearwardly of the transparent shield;

"(c) Vertical holes in the bosses to rotatably adjustably receive the vertical support rods; and

"(d) Offset support rods rotatably mounted in rotatable clamps to give a 'universal' mounting. * * "

This combination, plaintiff asserts, results in a sturdy and rigid windshield, of simple construction, readily adjustable to various sizes and shapes of motorcycle handlebars and the accessories normally mounted thereon.

Defendants assert three defenses: First, that the Comiskey patent is invalid, as being no more than an aggregation of commonly used mechanical devices performing no new function; second, that the Comiskey patent is not infringed by the defendants' device, which provides for adjustability by the use of pipe clamps rather than bosses; and, third, that plaintiff has been guilty of laches in the prosecution of its claim.

We will consider the defenses made in the order stated. First, as to the validity of the patent, we approach this problem having in mind, of course, its presumptive validity. T. 35 U.S.C. § 282. The presumption does not, however, relieve the Court of the duty of inquiry as to its validity. Long v. Arkansas Foundry Co. (D.C.E.D.Ark.1956), 137 F.Supp. 835.

It is clear upon the evidence before us, that in 1936–1939 Harley-Davidson manufactured, advertised, and sold a motorcycle windshield of two panels, joined by a central cross brace. The windshield was attached to the handle bars by offset bent vertical rods. These rods extended from handle bar clamps, at their lower ends, to the said cross brace, to which they were welded at their upper ends. It was also testified that certain 1936 Harley-Davidson motorcycles, originally sold with a transparent, or plastic, upper panel, and an opaque flexible fabric vinyl covered cloth stiffened by a wire,

at its lower panel, were modified in use, by repair or replacement, to the degree that for the lower cloth panel a substitution of a panel of clear plastic was made, thus resulting in a shield fully transparent from top to bottom.

The Harley-Davidson windshield, so modified, differed from the Comiskey patent-in-suit in one respect as regards the supporting rods:—the vertical rods (extending from handle bar to cross brace) in Harley were welded to the cross brace, whereas in the Comiskey patent a "boss" (a rotatable adjustable bushing) was employed for this purpose. But this device of adjustability was not unique to Comiskey. The Walford patent (#1,532,008 of 1925) shows a motorcycle screen of celluloid having a cross brace at whose ends are loops in "crook" form, rotatably journalling bent rods, or vertical supporting members, fastened (as are those in Comiskey) by screw caps or cap nuts, with the lower ends of the vertical rods being offset or cranked and fitted with handle bar clamps. Walford's specifications read in part as follows:

" * * * With this arrangement of cranked supporting rods 6, rotatably mounted in the channel members 5 of the screen and adjustably mounted on the handle bars 9, any desired position of the screen may be obtained, and, in addition, the screen is capable of being fitted to any shape of handle bar. The screen may be tilted to any required angle and moved laterally or forwardly and rearwardly, so as to be the required distance from the driver's face"

Walford summarizes his description thus:

"It will be observed that when the clips 17 are released, each of the cranked rods, 6, 7 and 8 can turn in the clips 17 so as to allow the screen to move with a parallel movement from side to side. Further, by suitably slackening the handle bar clips, the screen can be tilted to any required angle. The screen can be adjusted nearer to or further away from the driver by moving the handle bar clips and suitably adjusting the cranks 7.

"The sheet 2 of flexible material may be made of celluloid, and as this may get damaged or become discoloured after considerable use, it can be removed from the framing members 5 and a fresh sheet can be inserted in its place.

"Although I have shown a screen of flexible material retained in a curved position by the bands 11, it is within the scope of this invention to use a screen of rigid material such as glass."

He describes the objects of his invention thus:

"This invention relates to wind screens and is more particularly intended for wind screens for attachment to the handle bars of cycles or motor cycles. The object of the present invention is to provide a screen which will be applicable to any shape or size of handle bar, which will be convenient to manufacture and to pack, and which can be adjusted to any position on the handle bar to suit the rider.

"A wind screen according to the present invention comprises a sheet of flexible transparent material having at or near its vertical edges, members which can be held securely in clips or sockets on the handle bar.

"The members provided upon the screen for securing it to clips or sockets on the handle bar are preferably cranked so that these can be adjusted to suit various shapes or sizes of handle bar or to suit the requirements of individual riders * * *."

The Bowser patent (British patent 531,137 of 1940) likewise utilizes the idea of adjustability. It shows a motorcycle windscreen of celluloid, having a frame or cross brace, at whose ends or sides are bearing numbers, within which

are rotatably mounted vertical supporting rods, bent right angularly at their lower ends, and there having clips, brackets, or handle bar clamps. Quoting from Bowser's specification:

"* * * Referring to the drawings, the windscreen comprises an upper panel 1 of celluloid or other appropriate transparent sheet material of a flexible or semi-rigid nature and a lower apron portion 2 of leather cloth or other suitable windproof material, the two being secured together along adjacent edges of stitching or otherwise. The transparent panel 1 is mounted in a flexible strip metal frame 3 to which are fixed at the sides bearing members 4 within which are rotatably mounted supporting arms 5 having right-angularly disposed extensions at their lower ends and these extensions carry clips or brackets 6 at their rear ends whereby the screen as a whole is adapted to be secured to the handle bar 7 of the motor cycle. * * *

"Instead of employing a celluloid or other transparent panel 1, the upper part of the windscreen may be made of opaque sheet material with one or more windows or apertures therein to afford visibility and in the case of a screen for a motor cycle used for military or like purposes, the upper part may be made of sheet steel or other appropriate material which will afford protection to the rider against enemy rifle or machine gun fire. Also the lower part or apron may be made of sheet steel armour plating or suitable bullet-proof material so as to afford additional protection for the rider against rifle or machine gun fire. * * *"

We thus conclude, on this phase of the case, that when the patentee herein (in order, the testimony discloses, to make his 1936 Harley-Davidson windshield fit his Indian motorcycle) provided a rotary mounting of the vertical posts in the cross brace, rather than relying upon a weld, he merely followed the prior art teachings of the Walford (No. 1,532,008) and Bowser (British No. 531,137) patents. There was nothing unique or novel in such a change. The two patents described, Walford and Bowser, clearly disclose the concept of rotatably mounting the bent or cranked supporting posts in the ends of the cross brace of the motorcycle for universal mounting and adjustment. The rotary adjustment features in Comiskey perform the same function as in Walford or Bowser. As to the remaining elements of the claim in suit, such as cross brace and transparent screen, they perform the same function in Comiskey as in Harley, which shows the combination as a whole, except for the rotary adjustment feature.

Plaintiff urges that the Comiskey patent, claim No. 1 in question, is a new combination of elements, not anticipated by prior art, accomplishing a new and useful result, hence patentable. The Court cannot so find. The rotary adjustment elements perform exactly the same function in Comiskey as in Walford or Bowser. And, with respect to the remaining elements of the claim, we repeat that they perform the same function in Comiskey as in Harley, which showed the claimed combination as a whole; except as we have noted, for the rotary adjustment feature. There is, in summary, nothing here that is new. Not the combination as a whole, nor the elements thereof, nor the function and interrelation of the parts, nor, indeed, the results obtained. We see revealed no "flash of creative genuis", but "merely the skill of the calling". Cuno Engineering Corp. v. Automatic Devices Corp. (1941), 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58. See also Cold Metal Process Co. v. Republic Steel Corp. (6 Cir., 1956), 233 F.2d 828; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp. (1950) 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

We noted above that the contribution made by Comiskey to the Harley-Davidson windshield was the replacement of the Harley weld by the Comis-

key bushing (the "boss"), thus obtaining adjustability. Not only, however, was this concept of adjustability known to the prior art, as the Walford and Bowser patents demonstrate, but it is clear, as well, that merely making the support rods adjustable, accomplished by using bosses, does not constitute invention "as adjustability is merely a result and is not patentable. No inventive novelty may be attributed to the fact that a structure is adjustable" Belden v. Air Control Products, Inc. (D.C.W.D. Mich.1956), 144 F.Supp. 248, 256; Allen v. Barr (6th Cir., 1952), 196 F.2d 159. Adjustability of parts is a tool carried by every journeyman mechanic.

We have commented above upon substitutions of the lower panel of the windshield, made by users either in the course of repair or mere replacement thereof. There seems to have been a considerable choice exercised in this respect. Bowser, as well as the prior users, selected panel materials from a wide range, transparent or opaque, and either stiff or flexible. The change from the lower canvas or cloth panel of the 1936 Harley model, to the transparent lower panel of the Comiskey patent was anticipated both by Bowser and by the Harley users. With respect to the panels, argument has also been made respecting different degrees of rigidity of the windshield, due to the employment of lower panels of different materials, i. e., plastic, or wire-stiffened cloth. The Court finds no significant difference with respect thereto, nor, in fact, can it find invention by Comiskey as regards the panels. Any changes made by him had been long anticipated.

The Court concludes, for the reasons hereinabove stated, that claim 1 of plaintiff's reissue patent No. 23,039 is invalid because of prior art anticipation and lack of invention. Since an invalid patent cannot be infringed the question of infringement does not arise. Nor is there need to pass upon plaintiff's alleged laches.

The foregoing opinion should be deemed to constitute the Court's findings of fact and conclusions of law, Fed.R. Civ.P. 52(a), and an order in conformity therewith may be presented.